IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JAMES JOHN OLENICK, | ) | Civil Action No. 3:11-1359-JMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on July 25, 2007, alleging disability as of November 2, 2004. After Plaintiff's application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on March 10, 2010, at which the Plaintiff (represented by counsel) appeared and testified. The ALJ issued a decision on March 19, 2010, denying benefits. He found that Plaintiff was not disabled within the meaning of the Social Security Act because Plaintiff could perform his past relevant work as a sales representative.

Plaintiff was fifty-nine years old at the time of the ALJ's decision. He has a high school education (GED) and past relevant work as a carpenter, owner/operator of a pest control company,

and a sales representative. Tr. 49. Plaintiff alleges disability due to degenerative disk disease of his lumbar spine, hepatitis C, hyperlipidemia, high blood pressure, residuals of a heart attack, posttraumatic stress disorder ("PTSD"), depression, and anxiety.

The ALJ found (Tr. 11-18):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 2, 2004, through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: back pain and coronary artery disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with restrictions which require no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over 6 hours in an 8-hour workday; only occasional climbing of ladders or scaffolds; and an environment reasonably free from extremes of temperature and humidity.

6. Through the date last insured, the claimant was capable of performing past relevant work as a sales representative. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.156).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 2, 2004, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(f)).

On April 19, 2011, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action in the United States District Court on June 3, 2011.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." <u>See</u> 20 C.F.R. § 404.1505(a).

## **MEDICAL RECORD**

Plaintiff reportedly had back surgery in 1994 or 1995. <u>See</u> Tr. 326, 330. Plaintiff was primarily treated for his impairments at the Veterans Affairs Medical Center ("VAMC") in Columbia, South Carolina since approximately February 2004. <u>See</u> Tr. 336. In May 2004, Plaintiff reported to nurse practitioner ("NP") Joan McElhinney complaints of lower back pain and intermittent numbness down his right leg. Examination revealed that Plaintiff had point tenderness of his lumbar spine and positive straight leg raising. NP McElhinney instructed Plaintiff not to engage in heavy lifting, bending, or squatting. Plaintiff was given an injection of Torodal for pain and prescribed steroid medication, non-steroidal anti-inflammatory medication, and a muscle relaxant. Plaintiff's medication list also indicated he took medications for depression and anxiety. Tr. 329-331. On June 28, 2004, Plaintiff was evaluated by Dr. Daniel Vallini, a neurologist, for

3

complaints of back pain.  Plaintiff reported that his medication helped with pain to the point he did not need to take the muscle relaxers.  Dr. Vallini assessed Plaintiff with osteoarthritis (lumbar spondylosis) and prescribed physical therapy in addition to medication.  Tr. 326-327.  In May 2005, Plaintiff reported he had been "out of work for several months after his firm down sized."  Tr. 317. In June 2005, Plaintiff reported to Dr.Vallini that his activities were very limited, any unusual straining activity caused low back pain with pain radiating down his right leg, but that his back pain was generally controlled with medication.  Examination revealed that Plaintiff walked without difficulty and could bend at the waist without flexing his knee to reach about one foot above the floor.  Tr. 314.

On June 23, 2005, Plaintiff was examined in the VAMC mental health clinic. Social Worker Janet Adams noted in June 2005 that Plaintiff was neatly groomed; had a depressed, anxious affect; and had fair memory and good concentration.  Plaintiff reported that he had frequent nightmares, night sweats, anger issues, depression, and mood swings; he drank alcohol to help with sleep; and he avoided crowds.  She assessed a global assessment of functioning ("GAF") score of 50[1] and opined that outpatient treatment was appropriate.  Plaintiff was provisionally diagnosed with PTSD and alcohol abuse.  Tr. 310-314.

---

[1]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ."  Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

In August 2005, Plaintiff reported to NP Kim Gilmore that he had variable moods, racing thoughts, difficulty focusing, and nightmares. Mental status evaluation indicated that Plaintiff had a variable/labile mood, anger, irritability, anxiousness, a mildly constricted affect, racing thoughts, non-restorative sleep, variable energy, isolation, nightmares and flashbacks, and alcohol use. NP Gilmore noted that Plaintiff had intact memory and good attention/concentration, insight, judgement, and ability for abstract thinking. She made a provisional diagnosis of PTSD, rated Plaintiff's GAF as 45, and adjusted his medication. Tr. 302-306. On September 12, 2005, NP Gilmore observed that Plaintiff had impaired short-term memory, but intact long-term memory, intact ability for abstract thinking, good insight, good judgment, and good attention/concentration. She noted that treatment was effective and Plaintiff had no medication side effects. NP Gilmore assigned a GAF score of 50. Tr. 298-302. On September 23, 2005, Plaintiff told Ms. Adams that he was sleeping poorly, hearing voices, and experiencing mood swings and hyper vigilance. Tr. 297-298. However, Plaintiff also reported he was less anxious.

In December 2005, Dr. Vallini noted that an MRI of Plaintiff's lower back revealed degenerative disc disease, articular facet arthritis, and some nerve root compression, but no spinal cord compression. He added a prescription of Tramadol for Plaintiff's low back pain. Tr. 290-291.

In February and April 2006, NP Gilmore continued to note that Plaintiff's mental health treatment was effective, and rated his GAF at 50. Tr. 274-278, 283-287. Plaintiff reported that he was searching for work and engaged in "hobbies/interests/work daily." Tr. 284-285.

In June 2006, Plaintiff reported muscle spasms in his lower back, but acknowledged that medication helped him with his back pain. Dr. Vallini's examination revealed that Plaintiff had limited bending at the waist, but was able to walk without difficulty. He prescribed Tramadol,

Ibuprofen, and Flexeril. Tr. 264-265. In July 2006, Plaintiff was treated on two occasions in the emergency room and reported increased back and leg pain. Tr. 201-209, 261-264. He said he recently hurt his back lifting a box of meat while helping a friend out at a restaurant. Tr. 249. After an MRI of Plaintiff's lower back in August 2006 showed a large mass at L3-L4 that displaced the exiting nerve root, Dr. Vallini referred Plaintiff to a neurosurgeon. Tr. 257-258; see also Tr. 210-212. Plaintiff underwent back surgery in November 2006 (see Tr. 251), and attended physical therapy between December 2006 and February 2007. Tr. 233-241, 243-244, 247-251.

In October 2006, NP McElhinney noted that Plaintiff's "adjustment disorder with depressed mood" was controlled with medication. She assessed his GAF as 50. Tr. 253-256. Plaintiff reported disturbed sleep, nightmares, isolation, irritability, avoidance of military topics, hyper vigilance, and hyper-startle response at an appointment at the mental health clinic in December 2006. His GAF was assessed as 50 and Plaintiff was told to resume taking Bupropion (which Plaintiff had stopped on his own). Tr. 244-247.

By January 2007, Plaintiff reported to Dr. Vallini that he "only rarely" had pain radiating into his left leg and was doing "much better" since his November 2006 surgery. Tr. 241-242. In late February 2007, Plaintiff reported increased pain when he rotated/twisted while doing housework; his physical therapist talked with him about options for "lifting/pulling/pushing when performing housework." Tr. 234.

In March 2007, the Veterans Administration ("VA") found Plaintiff disabled for purposes of service-connected VA disability benefits, as a result of "degenerative disc disease of the lumbar spine." Tr. 195-197.

In June 2007, Plaintiff reported he spent ten days at the beach in Maryland. He complained of problems sleeping, nightmares, loss of energy and interest, isolation, and continued problems with low back pain. He said he continued to have "low back pain which flares up every once in a while." Plaintiff reported he occasionally felt nauseous, but otherwise denied medication side effects. It was noted that Plaintiff's motor strength was 5/5, his reflexes were symmetrical bilaterally, and he had no sensory defects. Dr. Alberto Gonzalez-Cuervo adjusted Plaintiff's medication and rated his GAF at 50. Tr. 222-226.

In July 2007, Plaintiff reported he experienced "relatively little pain" since his November 2006 back surgery, and that his pain was "easily managed" with his prescribed medications. Dr. Vallini noted that Plaintiff was "doing well" with minimal residual pain and was "able to engage in normal activities of daily living." Tr. 220-222. In December 2007, NP McElhinney noted that Plaintiff's adjustment disorder and back impairment were "controlled on current medication." Tr. 418-419.

In January 2008, Plaintiff was evaluated for complaints of chest pain and an abnormal electrocardiogram. The impression was acute inferior myocardial infarction with uncontrolled hypertension. It was noted that Plaintiff continued to smoke and use alcohol, and that he reported he got short of breath when running in the field with his dogs. A stent was placed in his right coronary artery. Tr. 363-367. A myocardial perfusion study in February 2008 revealed reversible defect of the interoseptal wall, mild reversible redistribution of the interior wall, and partially reversible defect of the anteroapical wall. Tr. 377-378. Dr. Victor Seghers, a cardiologist, indicated that no heart medication changes were needed. Tr. 389-390.

In June 2008, Plaintiff reported he exercised five days a week, walking for about thirty to forty minutes a day. Tr. 503, see also Tr. 544. Dr. Seghers opined that Plaintiff was "doing very well." Tr. 508-509.

In December 2008, Plaintiff complained of bilateral foot pain with some neuropathy symptoms. Neurontin was prescribed. NP McElhinney observed that Plaintiff's adjustment and back impairment were controlled with treatment. Tr. 532. In December 2008, Plaintiff underwent a cardiac catheterization after reporting chest pain and shortness of breath (dyspnea). He was found to have an eighty percent proximal left descending stenosis for which stent placement was done. Tr. 648-649, 653. Later that month, Plaintiff reported he had "been more vigorous and ha[d] less dyspnea than in the past." Tr. 653-654. At the cardiac clinic at the VAMC In February 2009, Plaintiff reported decreased energy, but said he was "doing much better." Tr. 576-580.

In March 2009, NP McElhinney noted that Plaintiff's adjustment disorder and back impairment were controlled with treatment. Tr. 573. Plaintiff reported he walked three miles daily in April 2009. Tr. 562. In June 2009, Dr. Alberto Saenz observed that Plaintiff was doing well and was very active. Tr. 554. Plaintiff reported he was feeling great, was very active, and had no complaints in December 2009. Tr. 619. NP McElhinney again observed that Plaintiff's adjustment disorder and back impairment were controlled with treatment in December 2009. Tr. 616-618.

As noted above, Plaintiff's date last insured for purposes of DIB benefits was December 31, 2009. Plaintiff was treated on January 4, 2010 in the emergency room for complaints of back pain. Baclofen, Tramadol, and Percocet were prescribed. Tr. 611-615. X-rays of Plaintiff's lumbar spine on January 13, 2010 revealed narrowing of the L4-5 and L5-S1 disc spaces and neural foramen. Tr.

647. Plaintiff complained of worsening back pain on January 20, 2010, and he was given an increased dose of Ultram. Tr. 635.

On February 25, 2010, NP McElhinney completed a "Multiple Impairment Questionnaire" in which she opined that Plaintiff could sit and stand/walk for less than one hour each in an eight-hour day and could frequently lift or carry five pounds and occasionally lift ten pounds, but could never lift or carry more than ten pounds. She opined that Plaintiff "constantly" experienced pain and other symptoms which were serious enough to interfere with his attention and concentration, and that he was incapable of even low stress work. Although she first worked with Plaintiff in March 1996, NP McElhinney opined that these limitations had been present since the early 1980s. Tr. 621-628.


State agency psychologist Dr. Jeffrey Vidic (in November 2007) and Dr. Judith Von (in August 2008) reviewed Plaintiff's records and opined that Plaintiff did not have a severe mental impairment. Tr. 349-362, 463-476. State agency physicians Dr. Dale Van Slooten (in October 2007) and Dr. Jim Liao (in June 2008) reviewed Plaintiff's records and opined that Plaintiff could perform at least light work. Tr. 341-348, 477-484.

## HEARING TESTIMONY/REPORTS

In August 2008, Plaintiff completed a "Function Report" in which he denied doing any housework, but reported driving, paying bills, getting the mail, and going to church. Plaintiff estimated that he could lift five pounds, sit for one hour at a time, stand for five to fifteen minutes at a time, and walk fifty yards. He reported no limitations in concentration. Tr. 144-151. In an October 2007 Report of Contact, Plaintiff reported that he went to therapy for PTSD and took medication which helped him. He went to the store or church (but did not stay too long); was able

to bathe himself, dress, and prepare simple meals; sometimes needed his wife to remind him to take his medication; watched sports on television; and used a computer, but did not do anything too complicated. Tr. 152. In a June 2008 Report of Contact, Plaintiff said that he had not been to therapy for his PTSD for a while, but his medications definitely helped him. He was able to do all of his activities of daily living, watched sports on television, read an occasional newspaper story, could use a computer, and handled a check book. He also stated that he preferred to avoid big crowds and loud noises. Tr. 167.

At the hearing, Plaintiff testified that he was unable to work because of severe back pain, difficulty walking, and limited mobility. Tr. 26. He stated he had pain in his back, which radiated down his left leg on a daily basis and was generally 7 out of 10. Tr. 32. Plaintiff testified that he had PTSD symptoms of disturbed sleep, dreams, anxiety, and depression. He said he had anxiety attacks a few times a week. Tr. 43.

Plaintiff estimated he could sit for thirty minutes at a time, could stand for fifteen to twenty minutes, could lift ten pounds occasionally, and could only concentrate for about thirty minutes at a time due to pain. Tr. 36-38. Plaintiff stated that his medication caused him drowsiness and nausea. He said that he has three to four bad days a week, during which he is hunched over in pain and has difficulty walking. Tr. 44-45. Plaintiff testified that he did light household duties including preparing meals in a microwave. Tr. 47. He drove forty minutes to get to the hearing. Tr. 23.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ failed to properly weigh the medical evidence because he gave little weight to treating NP McElhinney's opinion; (2) the ALJ erred in finding that his mental impairments were non-severe; (3) the ALJ failed to properly evaluate his credibility; (4) the ALJ

failed to weigh the VA disability determination; and (5) the ALJ relied upon flawed VE testimony. The Commissioner contends that the final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[2] and free from reversible legal error.

### A. Weighing of Medical Evidence/Opinion of NP McElhinney

Plaintiff alleges that the ALJ improperly weighed the medical evidence in determining his residual functional capacity ("RFC"). In particular, he argues that the ALJ improperly discounted NP McElhinney's opinion. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff was not disabled from the alleged onset of disability (November 2, 2004) to his date last insured (December 31, 2009), and that the ALJ reasonably discounted NP McElhinney's opinion as a nurse practitioner.

A nurse practitioner, such as NP McElhinney, is not an acceptable medical source. See 20 C.F.R. § 404.1513; SSR 06-03p. She is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Opinions from other medical sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physician and mental restrictions. See SSR 06-03p. "[T]he case record should reflect the consideration of opinions from

---

[2]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. SSR 06-03p further provides:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Here, the ALJ's decision to discount NP McElhinney's opinion is correct under controlling law and supported by substantial evidence. The ALJ discounted this opinion in part because NP McElhinney is not a physician. Additionally, the ALJ noted that the opinion pertains to an administrative finding reserved to the Commissioner such that it should never be given controlling weight (Tr. 18). See 20 C.F.R. § 404.1527; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

The ALJ also articulated numerous other reasons for discounting NP McElhinney's opinion, including that it was inconsistent with her December 2009 statement that Plaintiff's impairments were controlled with medication. Tr. 17-18. He also discounted this opinion because NP McElhinney's treatment notes do not reflect that she ever advised that Plaintiff was so severely limited and restricted as in her February 2010 opinion. Tr. 18. The only restriction imposed by NP McElhinney was a limitation of "no heavy lifting, bending, or squatting" in May 2004 (prior to

Plaintiff's alleged onset of disability in November 2004). Tr. 331. Such a limitation would not preclude Plaintiff from performing light work (or his past relevant work as a sales representative). Additionally, NP McElhinney's treatment notes repeatedly indicated that Plaintiff's back and mental impairments were "controlled" with treatment. See Tr. 255, 419, 532, 573, 618. The ALJ also discounted NP McElhinney's opinion because it was inconsistent with records from other treating sources. The ALJ wrote that treatment notes showed that Plaintiff was cleared medically by her neurologist and was found by a physician to have no diabetic complications. Tr. 18. The ALJ's decision is also consistent with the opinion of State agency physician Dr. Liao that Plaintiff could perform light work. See Tr. 477-484.

     B.    Mental Impairments

Plaintiff alleges that the ALJ erred in not finding that his mental impairments were severe impairments. The ALJ contends that substantial evidence supports the ALJ's finding that Plaintiff did not establish that he had a severe mental impairment.

It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

> the abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Here, Plaintiff has not met his burden of showing that any of his mental impairments were severe impairments. Mental status examinations showed that Plaintiff had intact ability for abstract thinking, and good insight, judgment, and attention/concentration. Tr. 294-95, 300, 312. Plaintiff himself acknowledged that he did not have an limitations in concentration. Tr. 149. NP McElhinney repeatedly noted that Plaintiff's mental impairments were "controlled" with treatment. See Tr. 255, 419, 532, 573. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986). As the ALJ noted (Tr. 14, 17), despite his mental impairments, Plaintiff engaged in activities such as reading the newspaper, watching television, managing a checking account, using a computer, driving a car, attending church, and running errands. See Tr. 144, 147-149, 152.

The ALJ properly assessed Plaintiff's functional limitations resulting from his mental impairments by addressing four areas of functioning (activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation). See 20 C.F.R. 404.1520a. The ALJ's determination that Plaintiff had no limitations in these areas is supported by substantial evidence. The determination that Plaintiff had no limitations in activities of daily living is supported by evidence showing he engaged in a wide array of activities including doing light household chores, doing light cooking, watching television, reading some newspaper articles, using a computer, spending time with family members and friends on a regular basis, traveling to another state for a ten-

day vacation, attending church, driving a car, and doing errands. The ALJ's finding that Plaintiff

had no more than a mild limitation in social functioning is supported by evidence that Plaintiff spent

time with relatives and friends on a regular basis and attended church. The finding that Plaintiff had

no more than a mild limitation with regard to concentration, persistence, or pace is supported by

Plaintiff's statement in August 2007 that he could concentrate as long as he needed. Tr. 149. He was

also able to use a computer, manage a checking account, read a newspaper, and watch television.

There is no evidence that Plaintiff experienced any episodes of decompensation during the relevant

time period. Additionally, the ALJ's decision is supported by the findings of State agency

psychologists Dr. Vidic and Dr. Von that Plaintiff did not have a severe mental impairment (Tr. 349,

463). See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p ("Findings of fact made by

State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must

be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of

administrative review.").

  Even if the ALJ erred in finding no severe mental impairment, any such error is harmless

because the ALJ continued with the sequential evaluation and considered Plaintiff's PTSD,

depression, and anxiety in assessing Plaintiff's RFC (see Tr. 15-16). See Hill v. Astrue, 289 F. App'x

289, 292 (10th Cir. 2008); Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th

Cir. 1987)(finding the ALJ's failure to find that an impairment was severe harmless where the ALJ

would consider the impairment at later stages of the analysis); Jones v. Astrue, No.

5:07–CV–452–FL, 2009 WL 455414 (E.D.N.C. Feb 23, 2009).

C.    Credibility

Plaintiff alleges that the ALJ failed to properly evaluate his credibility.  He argues that the ALJ reversed the applicable standard for making credibility determinations by assessing his credibility against the RFC found rather than against the evidence, erred by equating notations that Plaintiff's pain was well-managed with a finding that his pain was of an insufficient degree to find that he was disabled, and placed undue reliance on Plaintiff's daily activities.  The Commissioner contends that the ALJ properly discounted Plaintiff's subjective complaints.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and correct under controlling law.  In his decision, the ALJ found that Plaintiff was not fully credible based on the medical and nonmedical evidence.  The ALJ's decision is also supported by Plaintiff's

16

activities of daily living. As noted by the ALJ (Tr. 17), Plaintiff's activities included preparing at

least simple meals, doing housework, running errands, and attending church. Tr. 144-152, 167. The

ALJ also properly discounted Plaintiff's credibility based on the inconsistencies between Plaintiff's

testimony and the evidence of record. See Mickles v. Shalala, 29 F.3d at 930. The ALJ noted (Tr.

17) that Plaintiff initially testified that he stopped working because of a disability, but later

acknowledged he was laid off by his employer during a downsizing. See Tr. 26-27, 317.[3]  As noted

by the ALJ (Tr. 16), Plaintiff told a care provider that he walked three miles daily, but testified at the

hearing that he could walk only two blocks. See Tr. 36-37, 562.

     D.    VA Disability Determination

       Plaintiff alleges that the ALJ erred by failing to state what weight, if any, he gave to

the VA's disability determination. The Commissioner contends that the ALJ reasonably considered

the VA disability rating but discounted it in light of the record as a whole, including evidence which

was not before the VA at the time of its March 2007 rating.

       Evidence of an impairment includes: "[d]ecisions by any governmental or nongovernmental

agency about whether you are disabled or blind[.]" 20 C.F.R. § 404.1512(b)(5). SSR 06-03p

provides:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final
> responsibility for deciding certain issues, such as whether you are disabled, is
> reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical
> Source Opinions on Issues Reserved to the Commissioner"). However, we are
> required to evaluate all the evidence in the case record that may have a bearing on our
> determination or decision of disability, including decisions by other governmental and

---

[3]When a claimant stops working for reasons unrelated to his medical condition, it may support
a finding that the claimant is not disabled. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992);
Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972).

nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

*****

Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

The ALJ reasonably considered the VA disability rating. As noted above, the ALJ is not bound by such a rating. Further, although the ALJ did not explicitly state why he discounted the VA disability rating, he acknowledged it in his opinion and implicitly rejected it. See Pelkey v. Barnhardt, 433 F.3d 575 (8th Cir. 2006)("Although [the ALJ] did not specifically mention the 60 percent figure [percentage of VA disability rating], the ALJ did not err because he fully considered the evidence underlying the VA's final conclusion that Pelkey was 60 percent disabled"). The ALJ here specifically noted that the VAMC treatment records indicated that Plaintiff was awarded a service-connected disability for degenerative disc disease of the lumbar spine (Tr. 11) and that Plaintiff testified that he was awarded 70 percent service-connected disability for his back impairment and diabetes (Tr. 16). He discussed the VAMC evidence, including evidence of Plaintiff's back and other impairments extensively. The ALJ did not find that Plaintiff's diabetes was a severe impairment. The ALJ specifically noted that Plaintiff's diabetes was adequately controlled with medication and that specifically during an October 7, 2009 comprehensive diabetic consultative examination, it was noted (except for a low heart rate) physical examination was grossly normal, in

18

May 2009, diabetic neuropathy was ruled out; in an October 2009 comprehensive diabetic consultative examination Plaintiff was assessed to have no complications due to diabetes; and in December 2009 NP McElhinney noted that Plaintiff's diabetes was controlled on his current medical regimen. Tr. 13-14. Further, the VA disability rating was made prior to Plaintiff's improvement after his back surgery. The ALJ considered Plaintiff's back impairment and found that it only limited to performing light work.

E.     VE Testimony

Plaintiff alleges that the ALJ's finding that he can perform his past relevant work, which is based on the VE's testimony, is not supported by substantial evidence. He argues that the ALJ should have accepted the VE's testimony (in response to questioning by Plaintiff's counsel) that if a claimant had the limitations listed in NP McElhinney's opinion,[4] the claimant would be unable to perform work. The Commissioner argues that the ALJ reasonably relied on the VE's testimony in finding that Plaintiff could do his past relevant work as a sales representative.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The Commissioner may employ the services of a VE at step four of the sequential

---

[4]The VE testified that if an individual was limited to sitting only with his legs elevated, was incapable of even low stress work due to depression and anxiety, and would miss work three times a month, the individual would be unable to perform work due to any one of these limitations. Tr. 51-52.

evaluation process to help determine whether a claimant can perform his or her past relevant work. See 20 C.F.R. §§ 404.1560, 416.960.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

The ALJ, in his decision, found that Plaintiff could perform his past relevant work as a sales representative because it did not require the performance of work-related activities precluded by Plaintiff's RFC. He noted that at the hearing the VE testified that Plaintiff could perform this work as generally performed and as Plaintiff described he performed the job. Tr. 18. At the hearing, the ALJ asked the VE to consider a claimant with the restrictions found by the ALJ as to Plaintiff's RFC (limited to lifting/carrying no more than twenty pounds occasionally and ten pounds frequently, no standing or walking over six hours in an eight hour day, only occasional climbing of ladders or scaffolds, and an environment reasonably free from extremes of temperature and humidity). In response, the VE testified that such an individual would be able to work as a sales representative both as Plaintiff described this past relevant work and as the job is performed in the national economy. Tr. 49-50.

Here, the ALJ was not required to include additional limitations proposed by Plaintiff's counsel because the ALJ did not find these limitations to be credible and/or supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by

claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."); Chrupcala, supra. Plaintiff's counsel's question included limitations from NP McElhinney's opinion, which the ALJ reasonably rejected, as discussed above.

## **CONCLUSION**

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **AFFIRMED**.

Joseph R. McCrorey
United States Magistrate Judge

July 31, 2012
Columbia, South Carolina